UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
:
D&Z AUCTION RESELLERS, LLC, *et al*.  :  Case No. 3:19-cv-01242-WGY
:
Plaintiffs,  :
:
:
-against-  :
:
:
MEDI-DATA CORPORATION, *et al*.  :
:
Defendants.  :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANT MICRO MERCHANT SYSTEMS'S MOTION TO DISMISS
THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND
<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

**TO THE HONORABLE COURT:**

Defendant Micro Merchant Systems ("MMS"), through its undersigned counsel, respectfully submits this Motion to Dismiss the claims asserted against it by Plaintiffs D&Z Auction Resellers, LLC and Gustavo A. Moreno Ponce (together, "Plaintiffs") pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure, and states as follows:

**<u>INTRODUCTORY STATEMENT</u>**

Defendant MMS is one of more than twenty named defendants that Plaintiffs have jumbled together in the Complaint in an apparent attempt to unearth some viable theory of liability against someone. At least with respect to MMS, however, the Complaint contains no facts giving rise to any cognizable claim.

Plaintiffs in this action are a Puerto Rico-based company and its owner, who are purveyors of a copyrighted computer software program used by pharmacies to help manage their patient information. The Complaint stems from events allegedly arising after two of Plaintiffs' employees, defendants Luis and Genaro Duran, defected to a company—defendant Medi-Data Corporation—that sells a rival software program. Though the Complaint offers little more than vague assertions about those events, Plaintiffs appear convinced that, after the Durans left Plaintiffs' employ, they somehow used the knowledge they had gained while working for Plaintiffs, along with some hardware they allegedly pilfered on the way out the door, to help Plaintiffs' existing pharmacy customers switch from Plaintiffs' software product to the product peddled by the Durans' new employer.

Almost in passing, the Complaint speculates in two short and conclusory paragraphs that the Durans had some undefined kind of help from MMS. Plaintiffs do not, however, allege that that MMS had any of the insider knowledge or hardware that allegedly enabled the Durans to carry out their plan.

Despite lacking any facts tending to show wrongful conduct by MMS, the Complaint attempts to conjure three threadbare claims against MMS: (1) violation of the Computer Fraud Abuse Act ("CFAA"); (2) copyright infringement; and (3) violation of the anti-circumvention provisions of the Digital Millennium Copyright Act ("DMCA"). Each of these claims fails as against MMS, for several reasons. Chief among them is that, under the applicable pleading standard, the two conclusory paragraphs concerning MMS' alleged involvement with the Durans fails to articulate a plausible claim against MMS. The Complaint is deficient for other reasons as well:

First, with respect to the CFAA claims, Plaintiffs are barred both by the applicable statute of limitations, and for failing to adequately allege physical damage to a computer system or computer files, which is a necessary prerequisite to any civil cause of action under the statute. Plaintiffs have additionally failed to plead that MMS acted with the requisite scienter to state a CFAA claim.

Second, with respect to the copyright claim, the Complaint simply fails to allege that MMS—as opposed to the Durans—ever "copied" Plaintiffs' copyrighted software program. Nor does it include any allegation that could plausibly be read to impose liability on MMS for contributory infringement. Indeed, it is unclear from the Complaint whether Plaintiffs even intended to assert a copyright claim against MMS.

Third, with respect to the DMCA claim, Plaintiffs do not contend that MMS itself engaged in any circumvention of a technical measure, and the DMCA does not impose any form of secondary liability for an alleged violation of that statute. Moreover, the Complaint fails to allege that MMS—or anyone else—circumvented technology that was protecting a copyrighted work, as required to state a claim under that statute.

For all these reasons and more, the claims against MMS should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## FACTUAL ALLEGATIONS

According to the Complaint, Plaintiff Gustavo A. Moreno Ponce ("Moreno") is the creator and owner of a copyrighted computer program known as "PharmaScan." Compl. ¶¶ 5, 18. PharmaScan allows its users "to manage inventory, patient's profile, allergies, drug-drug interaction, patient education monographs, prescription auxiliary label warnings, duplicate therapy, accounts receivable/payable, digital signature and document scanning and imaging,

payment reconciliation." *Id*. ¶ 18. Plaintiffs allege that Moreno has held a copyright in PharmaScan since 1989, and that, through various business entities, including Plaintiff D&Z Auction Resellers, LLC, Moreno licenses PharmaScan to pharmacies for use on their store computers. *Id*. ¶¶ 19-20.

The gist of the lawsuit concerns the actions of a former employee of Plaintiffs, Luis Duran, after he allegedly left Plaintiffs' employ to go work for a competitor, Medi-Data Corporation ("Medi-Data"), in 2016. *Id*. ¶¶ 22-23. According to the Complaint, by virtue of his employment with Plaintiffs, Luis Duran "knew how to install, operate, delete, maintain and service [PharmaScan] in the computers of subscribing pharmacies." *Id*. ¶ 21. Plaintiffs claim that, when Luis left, he took with him (in addition to his know-how regarding the PharmaScan program) hardware and software programs that allowed him to access PharmaScan. *Id*. ¶¶ 24, 28. Luis then allegedly approached pharmacies that he had formerly serviced while working for Plaintiffs and "offered the products of his new employer." *Id*. ¶ 25. The Complaint asserts that Luis also told these pharmacies that he could retrieve "the data under PharmaScan program encryption"—that is, the pharmacy patients' "purchase and consumption history"—from the PharmaScan program. *Id*. ¶¶ 26-27. Then, allegedly with the help of another former employee of Plaintiffs named Genaro Duran, Luis:

> unlawfully accessed the PharmaScan program, copied it to another computer and ran it to access the encrypted data related to clients [sic] purchase and consumption history. Defendants Luis and Genaro Duran de-encrypted the data and transferred it to the client's new servers, saving hundreds of hours in data entry for the new programs.

*Id*. ¶ 27. The Complaint further alleges that the two Durans were able to accomplish this "through the use of unlawfully retained hardware components—security keys—and software knowledge from their days as employees of" Plaintiffs. *Id*. ¶ 28.

As is particularly relevant to the instant motion, the Complaint alleges no facts specifically relating to MMS. Rather, it conclusorily asserts that "[u]pon information and belief defendant Micro Merchant Systems assisted defendants Duran in performing the acts detailed in the preceding paragraphs." *Id*. ¶ 29. The Complaint does not contain any information about how MMS "assisted" the Durans, except to confusingly claim that MMS "provided programmers assistance to circumvent plaintiffs' software security implementations." *Id*. ¶ 30. The Complaint does not explain how or when this alleged "assistance" occurred, what specific acts MMS supposedly did to carry out this assistance, or the nature of "plaintiffs' software security implementations." In fact, beyond these barebones assertions, the Complaint contains *no* other allegations regarding MMS.

The Complaint purports to make three claims against MMS, along with nineteen other named defendants plus six Doe defendants: (1) a violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(4), based on Defendants allegedly "access[ing] plaintiffs' computers without authorization" and thereby "obtaining valuable data," Compl. ¶ 39; (2) copyright infringement, based on the allegation that "defendants willfully and unlawfully reproduced plaintiffs' software", *id.* ¶ 44; and (3) a violation of the anti-circumvention provisions of the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 1201, based on defendants' alleged "circumvent[ion of] the technological measures in plaintiffs' software to extract information from the system without authorization," *id*. ¶ 47. Though the Complaint names over 25 separate defendants, it does not specify which of the claims apply to which defendants, nor does it identify any specific acts done by any of them other than the Durans and Medi-Data.

**ARGUMENT**

I. **Legal Standard**

To survive a motion to dismiss for failure to state a claim, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). The factual allegations must be sufficient to provide the defendant with notice of the claims against it and the grounds for entitlement to relief. *Twombly*, 550 U.S. at 555-56; *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."); *Ruivo v. Wells Fargo Bank, N.A.*, 766 F.3d 87, 91 (1st Cir. 2014) (Rule 8 requires a complaint to "give the defendants notice of the nature of the claim against them[.]") Under *Iqbal* and *Twombly*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has . . . not shown . . . that the pleader is entitled to relief." *Sun W. Mortg. Co. v. Flores*, No. 15-1082 (GAG), 2016 U.S. Dist. LEXIS 31149, at *5-6 (D.P.R. Mar. 10, 2016) (internal marks, alterations and citation omitted).

II. **The Complaint Fails to State a Plausible Claim For Relief Against MMS**

The Complaint in this action fails to satisfy the relevant pleading standard on multiple levels. Its abbreviated allegations against MMS, which appear to be little more than a speculative afterthought, represent exactly the kind of bare-bones, conclusory pleading that *Iqbal* and *Twombly* are intended to guard against. As courts in this Circuit have noted, "although the standard of review on a Motion to Dismiss is deferential to Plaintiff's 'well-pleaded' factual allegations, it does not require the Court to give credence to wholly unsupported allegations." *Paiva v. Tyree*,

No. 18-00054-WES, 2018 U.S. Dist. LEXIS 189477, at *6-7 (D.R.I. Nov. 6, 2018), *report & recommendation adopted*, 2019 U.S. Dist. LEXIS 44510 (D.R.I. Mar. 19, 2019); *see also Guzman-Vargas v. Calderon*, 672 F. Supp. 2d 273, 284 (D.P.R. 2009) ("The Court need not credit, however, bald assertions [and] unsupportable conclusions when evaluating the complaint's allegations." (internal marks and citation omitted)). The minimal allegations concerning MMS have no factual support, and need not be credited even on a motion to dismiss.

More importantly, even if they could be credited, the allegations regarding MMS's involvement in Luis Duran's activities and alleged violations of law are implausible on their face. Plaintiffs' entire theory of the case for each of their claims turns on their allegations that Luis Duran was allegedly able to access and copy the PharmaScan program, and then de-encrypt the patient data contained therein, by virtue of the knowledge he gained as Plaintiffs' employee and by using a security key he had retained from his time working there. *See, e.g.*, Compl. ¶ 21 (alleging Luis Duran's responsibilities as Plaintiffs' employee meant that he "knew how to install, operate, delete, maintain and service" PharmaScan as well as gave him "access to hardware required for the operation and maintenance oldie [sic] program[.]"); ¶ 24 (alleging that, after he left Plaintiffs' employ, Luis Duran "retained hardware components that granted him . . . access to PharmaScan."); ¶ 28 (alleging that Luis and Genaro Duran "circumvented the encryption program through the use of unlawfully retained hardware components — security keys — and software knowledge from their days as employees" of Plaintiffs). Given the nature of these allegations, it is simply not plausible to also allege that MMS—which is not alleged to have any connection with Plaintiffs nor any specialized knowledge of the type that Plaintiffs claim the Durans used—was somehow involved in or "assisted" the Durans activities. *See, e.g.*, *Air Sunshine, Inc. v. Carl*, No. 09-2019 (MEL), 2010 U.S. Dist. LEXIS 126238, at *7 n.1 (D.P.R. Nov. 30, 2010) ("In the context

of a motion to dismiss, courts look to only well-pled allegations that are plausible on their face[.]"), *rev'd on other grounds*, 663 F.3d 27 (1st Cir. 2011). The Complaint does not deign to explain how MMS could have somehow been involved in an alleged scheme that depended entirely on specialized knowledge and improperly obtained hardware that MMS never had. The Complaint therefore fails to tie MMS to any of Plaintiffs' causes of action and does not plausibly state any claim against MMS under the prevailing 12(b)(6) standard.

The Complaint should also be dismissed as against MMS for the additional reason that it fails to provide MMS the requisite notice of the nature of the claims against it that is required under Federal Rule of Civil Procedure 8(a). *See Ruivo*, 766 F.3d at 91 (Rule 8 requires a complaint to "give the defendants notice of the nature of the claim against them[.]"). While the Complaint does specify the general causes of action alleged, it contains no information as to which of the three claims are asserted against which of the 20-odd defendants. Nor does it provide any clarity as to how the minimal allegations against MMS—which are limited to the unsupported and implausible assertion that MMS "assisted" Luis Duran in some form—translate into liability for those claims—*i.e.*, whether it considers MMS to have primary liability or some form of secondary or contributory liability. Plaintiffs' failure to draw any connection between MMS and the claims asserted fails to meet the standard of Rule 8 and therefore warrants dismissal.

### III. Each of the Claims Against MMS Is Not Adequately Alleged

In addition to the Complaint's general failure to meet the plausibility standard articulated by the Supreme Court in *Iqbal* and *Twombly* with respect to its allegations against MMS, it also fails to adequately plead any of the three identified causes of action against MMS.

### A. The Complaint Fails to State a Claim Against MMS Under the CFAA

The CFAA provides civil liability against, in relevant part, anyone who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value[.]" 18 U.S.C. § 1030(a)(4); *see also* Compl. ¶¶ 38-39. While the Complaint does not specify exactly what allegations add up to a violation of this provision of the CFAA, it presumably refers to the assertion that Luis Duran accessed the PharmaScan program through individual pharmacies' computers in order to obtain patient information. *See generally* Compl. ¶¶ 25-28.

These allegations are insufficient to state a claim under the CFAA against MMS for at least three reasons. <u>First</u>, the claim is barred by the CFAA's two-year statute of limitations on civil claims. *See* 18 U.S.C. § 1030(g) ("No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of[.]") Here, the Complaint alleges that Luis Duran left Plaintiffs' employ "in 2016" and was hired by Medi-Data "immediately after resigning." The Complaint goes on to allege that, between March of 2016 and March of 2017, Plaintiffs terminated each of the 16 pharmacy defendants' license to use PharmaScan. But there is no allegation of any specific activity after March of 2017—more than two years before the Complaint was filed on June 10, 2019.[1] Consequently, the CFAA claim is barred by the applicable statute of limitations.

<u>Second</u>, the Complaint ignores the additional threshold requirement that any civil action under the CFAA may be brought only by a person who "suffers damage or loss by reason of a violation of the section." 18 U.S.C. § 1030(g). Importantly, "damage" in this context means *only*

---

[1] Nor is there any allegation that Plaintiffs did not discover or could not have discovered the asserted violations until some later point in time.

"the destruction, corruption, or deletion of electronic files, the physical destruction of a hard drive, or any diminution to the completeness of the system"; just as importantly, it does *not* mean "harm resulting from the disclosure to a competitor of trade secrets or other confidential information[.]" *Am. Health, Inc. v. Chevere*, No. 12-1678 (PG), 2017 U.S. Dist. LEXIS 211334, at *8-9 (D.P.R. Dec. 22, 2017) (citations omitted); *see also Sun West Mortg. Co.*, 2016 U.S. Dist. LEXIS 31149, at *9-10 (same). Here, there is no allegation of any cognizable "damage" suffered by Plaintiffs—rather, the allegations relate solely to the alleged harm suffered by Plaintiffs as a result of Luis Duran's gaining access to previously encrypted patient data, and using it to facilitate pharmacies' switching from Plaintiffs' product to Medi-Data's. Compl. ¶¶ 27-28. But that is exactly the kind of "harm resulting from the disclosure of . . . confidential information" that courts have routinely found non-cognizable under the CFAA. Accordingly, Plaintiffs have failed to allege "damage" as required to state a claim under that statute.[2]

Third, the Complaint does not plead any facts to establish the requisite scienter for a CFAA claim. The CFAA is aimed at unauthorized access that was made "knowingly and with intent to defraud." 18 U.S.C. § 1030(a)(4). Here, the Complaint contains no allegations concerning MMS's knowledge and state of mind, much less that it harbored an intent to defraud anyone. *See* Compl. ¶¶ 29-30. Thus, Plaintiffs' CFAA claim against MMS also fails for this reason. *See, e.g.*, *Sun*

---

[2] It is also doubtful that Plaintiffs have adequately alleged that Luis Duran—much less MMS—accessed any "protected computer without authorization or exceed[ed] authorized access." 18 U.S.C. § 1030(a)(4). While the Complaint is not entirely clear on this point, it appears to be alleging that Duran accessed the PharmaScan program through the *pharmacies*' computers. *See* Compl. ¶¶ 26-27. Presumably, the pharmacies themselves authorized him to do so, and the fact that he allegedly did not have authority to access the encrypted data contained in the PharmaScan program is of no moment where the statutory definition of "computer" includes "an electronic, magnetic, optical, electrochemical, or other high speed data processing device," but not a software program. *See* 18 U.S.C. § 1030(e)(1).

*West Mortg. Co.*, 2016 U.S. Dist. LEXIS 31149, at *8 (CFAA claim subject to dismissal where it "does not allege that [defendant exceeded authorization] with intent to defraud[.]").

### B. The Complaint Fails to State A Claim Against MMS for Copyright Infringement

The gist of Plaintiffs' copyright claim appears to be that, in order to de-encrypt the patient data stored in the PharmaScan system, Luis and Genaro Duran first made copies of that copyrighted program. *See* Compl. ¶ 27 (alleging that the Durans "unlawfully accessed the PharmaScan program [and] copied it to another computer."); ¶ 35 (alleging that the Durans and one of the pharmacy defendants "accessed and made unauthorized copies of the program PharmaScan."). "[A] plaintiff alleging copyright infringement has the burden of proving two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 105 (1st Cir. 2011) (internal marks and citation omitted).

Because Plaintiffs have not differentiated their allegations concerning individual actions of at least twenty of the defendants, it is unclear whether Plaintiffs intended the Complaint to make a claim for copyright infringement against MMS. As noted above, the *only* allegations against MMS are that it "assisted defendants Duran" by "provid[ing] programmers assistance to circumvent plaintiffs' software security implementations." Compl. ¶¶ 29-30. On their face, these allegations relate only to Plaintiffs' DMCA circumvention claim, *see* Section III.C *infra*; there is simply no cognizable allegation that MMS was responsible for the alleged copying of the PharmaScan program by the Durans. Consequently Plaintiffs have failed to state a claim for direct infringement against MMS.

To the extent Plaintiffs' allegation that MMS "assisted" the Durans in their activities can be read as a claim for contributory copyright infringement, that claim also fails. A claim for contributory infringement requires allegations that a defendant, "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Montalvo v. LT's Benjamin Records, Inc.*, 56 F. Supp. 3d 121, 133-34 (D.P.R. 2014) (citation omitted). The Complaint in this action alleges none of those things with respect to MMS. There is no allegation from which a reasonable inference can be drawn that MMS "induced, caused, or materially contributed" to the allegedly infringing conduct—that is, the copying of the PharmaScan program. Nor does the Complaint allege that MMS had knowledge that the actions of the Durans for which it allegedly provided assistance constituted infringement. Indeed, the Complaint does not even provide boilerplate allegations that MMS committed contributory infringement—in fact, it never even mentions contributory infringement at all.

In light of the Complaint's failure to make any substantive allegations of direct or contributory copyright infringement by MMS, this claim should be dismissed. The only plausible conclusion is that Plaintiffs never intended to plead such a claim against MMS.

### C. The Complaint Fails to Adequately Allege That MMS Violated the DMCA

In addition to their CFAA and copyright infringement claims, Plaintiffs assert a claim for a violation of the anti-circumvention provisions of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §1201 *et seq.* The relevant provision of that statute provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." *Id* § 1201(a)(1)(A). Plaintiffs' theory of liability under the DMCA appears to be that, by de-encrypting the patient data contained in the PharmaScan program in use at each pharmacy, *Luis and Genaro Duran* "circumvented the technological measures in Plaintiffs' software to extract information from the system without authorization." Compl. ¶ 47. While the

Complaint is not clear as to whether and how MMS was involved in this particular alleged action, it is clear that there is no allegation that MMS itself engaged in any circumvention. Rather, Plaintiffs' theory appears to be that MMS "provided programmers assistance" to help the Durans accomplish the de-encryption. *Id.* ¶ 30.

These allegations fail to state a claim against MMS under the DMCA for at least two reasons. First, at best, the Complaint alleges only that MMS "assisted" the Durans in some vaguely defined way. Thus, the Complaint at best alleges only that MMS should be subject to aiding and abetting or some other form of secondary liability for the alleged DMCA violation. But *nothing* in the DMCA provides for such secondary liability. It is well-settled that "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994). The Complaint provides no reason to diverge from that rule here, nor is MMS aware of any case, in this district or any other, in which a court has seen fit to do so. Plaintiffs have therefore failed to state a claim against MMS under the DMCA.

Second, even if the Complaint could somehow be construed as alleging that MMS was directly responsible for the de-encryption of patient data, it would *still* fail to state an anti-circumvention claim. That is because the DMCA anti-circumvention provisions apply only to the circumvention of technological measures that control access to "a work *protected under this title*"—*i.e.*, a <u>copyrighted</u> work. 17 U.S.C. § 1030(a)(1)(A) (emphasis added). Here, the only security measure identified in the Complaint is the "encryption program" that supposedly protects "*data* related to clients purchase and consumption history." Compl. ¶¶ 27-28 (emphasis added). But that patient data is not "a work protected under" the Copyright Act. *See, e.g.*, *Garcia-Goyco*

*v. P.R. Highway Auth.*, 275 F. Supp. 2d 142, 150 (D.P.R. 2003) (copyright "does not extend to facts") Thus, any action taken to access the allegedly encrypted patient data is, by definition, not gaining access to a work protected by copyright, and therefore does not give rise to liability under the DMCA. *Cf. Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1202 (Fed. Cir. 2004) ("17 U.S.C. § 1201 prohibits only forms of access that bear a reasonable relationship to the protections that the Copyright Act otherwise affords copyright owners."). In other words, the technological measure Plaintiffs have identified—*i.e.*, the "encryption program" for patient data—does not "prevent access to a work," *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 441 (2d Cir. 2001)—it merely secures non-copyrighted (and non-copyrightable) patient data. Indeed, the Complaint essentially admits as much in asserting that the alleged violation did not involve accessing the copyrighted software itself, but rather "circumvent[ing] the technological measures *in plaintiffs' software* to extract information from the system[.]" Compl. ¶ 47 (emphasis added). Accordingly, the allegations in the Complaint regarding the circumvention of the "encryption program" do not give rise to liability under the DMCA.[3]

## CONCLUSION

For the foregoing reasons, Defendant Micro Merchant Systems respectfully requests the Honorable Court to dismiss all of the claims in the Complaint against it, and grant such other relief as the Honorable Court shall find just and proper.

---

[3] Paragraph 46 of the Complaint also appears to reference 17 U.S.C. § 1201(a)(2)(A), a separate section of the DMCA that provides liability for individuals who "manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that— (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title." Compl. ¶ 46. But there is no allegation in the Complaint that would support a plausible inference that any of the Defendants—let alone MMS—was "trafficking" in any device "primarily designed" to circumvent technological copyright protections.

**IT IS HEREBY CERTIFIED** that on this same date the foregoing was filed by uploading to the CM/ECF system, which will send automatic notices to the attorneys of record.

Dated: August 30, 2019

                                      **GOLDMAN ANTONETTI & CÓRDOVA LLC**
*Attorneys for Defendant Micro Merchant Systems*
PO Box 70364
San Juan, Puerto Rico 00936-8364
Tel: (787) 759-4141
Fax: (787) 474-2314

**/s/ EDGARDO COLÓN ARRARÁS**
Edgardo Colon Arraras
USDC-P.R. #126912
ecolon@gaclaw.com