IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| D&Z AUCTION RESELLERS, LLC and GUSTAVO A. MORENO PONCE<br><br>Plaintiffs,<br><br>v.<br><br>MEDI DATA CORPORATION, *et al.*,<br><br>Defendants. | CIVIL NO. 19-CV-01242<br><br>COPYRIGHT INFRINGEMENT; VIOLATION OF DIGITAL MILLENNIUM ACT; COMPUTER FRAUD AND ABUSE |

**DEFENDANT NUESTRA FARMACIA SAN FRANCISCO'S MOTION TO DISMISS THE AMENDED COMPLAINT, [DKT_106], PURSUANT TO FED. R. CIV. P. 12(b)(6)**

TO THE HON. JUDGE WILLIAM G. YOUNG
U.S. DISTRICT JUDGE:

COMES NOW co-defendant, NUESTRA FARMACIA SAN FRANCISCO, LLC ("NFSF"), through its undersigned counsel, and very respectfully submits this motion to dismiss Plaintiff's claims against it, thereunder Rule 12(b)(6) of the Federal Rules of Civil Procedure, and decorously states as follows:

### I. INTRODUCTION

Plaintiffs' only remaining claim seeks damages for the allegedly willful infringement of their exclusive reproduction rights. The facts that support this infringement are made "upon information and belief", however no specific allegations as to the extent of the infringement are made. The remaining facts in the Complaint—when taken as true for the purposes of this motion—do not allege any cognizable claim for relief. Therefore, the remaining copyright claim against NFSF must be dismissed.

## II.  ARGUMENT

**1.  Legal Standard**

To survive a motion to dismiss for failure to state a claim, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). The factual allegations must be sufficient to provide the defendant with notice of the claims against it and the grounds for entitlement to relief. *Twombly*, 550 U.S. at 555-556; *see also Ruivo v. Wells Fargo Bank, N.A.*, 766 F.3d 87, 91 (1st Cir. 2014) (Rule 8 requires a complaint to "give the defendants notice of the nature of the claim against them[.]") Under *Iqbal* and *Twombly*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has . . . not shown . . . that the pleader is entitled to relief." *Sun West Mortg. Co. v. Flores*, 2016 U.S. Dist. LEXIS 31149, at *5-6 (D.P.R. Mar. 10, 2016).

**2.  Plaintiff's Copyright Infringement Claim Does Not Meet Federal Pleading Standards**

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." This rule "require[s] a plaintiff to plead with specificity the acts by which a defendant has committed copyright infringement." *Marvullo v. Gruner & Jahr,* 105 F. Supp. 2d. 225, 230 (S.D.N.Y. 2000). A claim is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To withstand a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. Indeed, "the pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at

555 (emphasis added) (internal citation omitted). Likewise, a complaint must account "for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 677. (emphasis added). Here, Plaintiff's copyright infringement claim is mere speculation and therefore fails to satisfy applicable pleading standards.

3.    **The Complaint fails to State a Claim for Copyright Infringement against NFSF.**

When a plaintiff alleges copyright infringement, it has the burden of establishing and proving (1) ownership of a valid copyright and that (2) constituent elements of the work, that are original, have been copied. *Airframe Sys., Inc. v. L-3 Commc'ns Corp.*, 658 F.3d 100, 105 (1st Cir. 2011).

Here, Plaintiffs have claimed and generalized more than 10 defendants under the same allegations and has made failed to distinguish between any of them. The copyright allegations of the Amended Complaint are the following:

> Paragraph 26. "Upon information and belief, Defendant Luis Duran informed his formerly served pharmacies that the data under PharmaScan program encryption could be retrieved and transferred into the new services program he was selling for the benefit of his new employer Medi Data Systems, without the need to request and obtain plaintiffs' authorization.
>
> Paragraph 27. "Defendants Luis and Genaro Durán de-encrypted the data and transferred it to the client's new servers, saving hundreds of hours in data entry for the new programs."
>
> Paragraph 34. "Upon information and belief, Defendant Nuestra Farmacia San Francisco accessed and utilized the program PharmaScan after the termination of its license for purposes beyond access to the data."

Defendants remaining cause of action for copyright infringement, as stated in paragraph 44 of the Amended Complaint. is that Defendants willfully and unlawfully reproduced Plaintiffs' PharmaScan Software.

Plaintiffs claim is based only on conjecture and is utterly lacking in factual basis. The complaint merely states that Defendants "accessed and utilized the program after termination of its license for purposes beyond access to the data". The Amended Complaint fails to state any facts

regarding purposes beyond access to the data. It is merely a conclusory allegation unsupported by facts.

More so, any access by the Defendants to, as alleged by Plaintiff, extract the pharmacy's patient data to transfer it to the client's new servers, saving hundreds of hours in data entry for the new programs, is fair use under Copyright law.

In *Assessment Technologies of WI, LLC v WIREdata, Inc.*, a case of copyright infringement were the owner of a copyrighted software used to compile and store real estate tax assessment data asserted infringement claim against a company seeking access to data for use by real estate brokers, the court ruled:

> From the standpoint of copyright law all that matters is that the process of extracting the raw data from the database does not involve copying Market Drive, or creating, as AT mysteriously asserts, a derivative work; all that is sought is raw data, data created not by AT but by the assessors, data that are in the public domain. A derivative work is a translation or other transformation of an original work and must itself contain minimum originality for the same evidentiary reason that we noted in discussing the requirement that a copyrighted work be original. Pickett v. Prince, 207 F.3d 402, 405 (7th Cir.2000); *Gracen v. Bradford Exchange*, 698 F.2d 300, 304–05 (7th Cir.1983). A work that merely copies uncopyrighted material is wholly unoriginal and the making of such a work is therefore not an infringement of copyright. The municipalities would not be infringing Market Drive by extracting the raw data from the databases by either method that we discussed and handing those data over to WIREdata; and since there would thus be no direct infringement, neither would there be contributory infringement by WIREdata. *It would be like a Westlaw licensee's copying the text of a federal judicial opinion that he found in the Westlaw opinion database and giving it to someone else. Westlaw's compilation of federal judicial opinions is copyrighted and copyrightable because it involves discretionary judgments regarding selection and arrangement. But the opinions themselves are in the public domain* (federal law forbids assertion of copyright in federal documents, 17 U.S.C. § 105), and *so Westlaw cannot prevent its licensees from copying the opinions themselves as distinct from the aspects of the database that are copyrighted.* See Matthew Bender & Co. v. West Publishing Co.,158 F.3d 693 (2d Cir.1998); *Matthew Bender & Co. v. West Publishing Co.*, 158 F.3d 674 (2d Cir.1998).

350 F. 3d 640, 644 (7th Cir. 2003).

The access by Defendants to the Plaintiffs' software—as alleged by the Plaintiffs— is similar to that in *Assessment Technologies* and, thus, constitutes fair use. Here, Defendants sought to retrieve the raw data input by the Defendants themselves, data that is unprotected and not subject to copyright. The fact that the Defendants might have used the Plaintiffs' software to access the data, as alleged by the Plaintiffs, does not change the outcome. *See Evolution, Inc. v. SunTrust Bank*, 342 F.Supp.2d 943, 952, 955–56 (D.Kan. 2004) (holding incidental copying of the plaintiff's software source code to extract and convert the defendant's raw data for use by software of another vendor was fair use). Plaintiffs cannot hold Defendant's raw data hostage by imposing a monopoly of access under the auspices of copyright.

The court further noted:

> AT would lose this copyright case even if the raw data were so entangled with Market Drive that they could not be extracted without making a copy of the program. The case would then be governed by *Sega Enterprises Ltd. v. Accolade,* Inc., 977 F.2d 1510, 1520–28 (9th Cir.1992). Sega manufactured a game console, which is a specialized computer, and copyrighted the console's operating system, including the source code. Accolade wanted to make computer games that would be compatible with Sega's console, and to that end it bought a Sega console and through reverse engineering reconstructed the source code, from which it would learn how to design its games so that they would activate the operating system. For technical reasons, Accolade had to make a copy of the source code in order to be able to obtain this information. It didn't want to sell the source code, produce a game-console operating system, or make any other use of the copyrighted code except to be able to sell a noninfringing product, namely a computer game. The court held that this "intermediate copying" of the operating system was a fair use, since the only effect of enjoining it would be to give Sega control over noninfringing products, namely Accolade's games. *See also Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 602–08 (9th Cir.2000); *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1539–40 n. 18 (11th Cir.1996); *Atari Games Corp. v. Nintendo of America, Inc.*, 975 F.2d 832, 842–44 (Fed.Cir.1992). […]

> Similarly, if the only way WIREdata could obtain public-domain data about properties in southeastern Wisconsin would be by copying the data in the municipalities' databases as embedded in Market Drive, so that it would be copying the compilation and not just the compiled data only because the data and the format in which they were organized could not be disentangled, it would be privileged to make such a copy, and likewise the municipalities. For the only purpose of the copying would be to extract

> noncopyrighted material, and not to go into competition with AT by selling copies of Market Drive. We emphasize this point lest AT try to circumvent our decision by reconfiguring Market Drive in such a way that the municipalities would find it difficult or impossible to furnish the raw data to requesters such as WIREdata in any format other than that prescribed by Market Drive. **If AT did that with that purpose it might be guilty of copyright misuse, of which more shortly.**

*Assessment Technologies of WI, LLC v WIREdata, Inc.*, 350 F. 3d 644-646 (emphasis added). Taking as true the allegations of the complaint that, Defendants accessed and used Plaintiffs software and copied the patients data for purposes of saving hundreds of hours in data entry for the new program, there is no copyright infringement.

**4.    The Complaint fails to State a Claim for Contributory Copyright Infringement against NFSF.**

If we were to assume that Plaintiff is claiming contributory infringement, which is not specifically pled, to plead contributory infringement, the Plaintiffs must allege: (1) direct copyright infringement by a third party; (2) knowledge by the defendants that the third party was directly infringing; and (3) defendant induced, caused, encouraged, or materially contributed to the infringement. *Leonard v. Stemtech Int'l, Inc.*, 2016 U.S. App. LEXIS 15565, at *15-16 (3d Cir. Aug. 24, 2016); *Visuals Unlimited*, 2014 U.S. Dist. LEXIS 49590, at *9 (E.D. Pa. Apr. 10, 2014) (Slomsky, J.); *Gordon v. Pearson Educ. Inc.*, 85 F. Supp. 813, 817 (E.D. Pa. 2015)  Plaintiffs fail to describe in what matter were NFSF actions constituted copyright infringement; because in order to have a legally sufficient claim for contributory copyright infringement, there must be an allegation of a direct copyright infringement.

For a plaintiff to prevail on a contributory infringement claim, a defendant must have knowledge or reason to have knowledge of direct infringement and must provide material assistance to the infringer. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019–22 (9th Cir.2001). The Complaint presented alleges no specific facts related to NFSF rather bases its arguments that "[u]pon information and belief, Defendant Nuestra Farmacia San Francisco,

aided by Defendants Luis and Genaro Duran, made unauthorized copies of the program PharmaScan after the termination of the license" This claim provides no further explanation upon what copies of the program where made and what was copied or the intention; furthermore omits the purpose of said "copies". These "factual allegations… based on 'information and belief' and contain[ing] nothing more than a rote recitation of the required elements of each respective claim… fall well short of the requirements set forth in *Iqbal*." *Simonyan v. Ally Fin. Inc.,* 2013 WL 45453, at *2 (C.D.Cal. Jan.3, 2013). "In the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim." *Solis v. City of Fresno,* 2012 WL 868681, at *8 (E.D.Cal. Mar.13, 2012). *See also*, *Vivendi SA v. T–Mobile USA Inc.,* 586 F.3d 689, 694 (9th Cir.2009).

Furthermore, on Paragraph 26 of the Amended Complaint Plaintiffs allege: "Upon information and belief, Defendant Luis Duran informed his formerly served pharmacies that the data under PharmaScan program encryption could be retrieved and transferred into the new services program he was selling for the benefit of his new employer Medi Data Systems, **without the need to request and obtain plaintiffs' authorization**.

The United States Supreme Court established the elements of contributory copyright infringement in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.* 545 U.S. 913, 930. The Court contended, "one infringes contributorily by **intentionally inducing or encouraging direct infringement**." (Emphasis added). The Court further explained that, in addition to intent to bring about infringement and distribution of a device suitable for infringing use, the inducement theory requires evidence of actual infringement by recipients of the device, the software as in this case. *Id.* at 940.

The allegations of the Amended Complaint clearly indicate facts that are inconsistent with a determination of copyright infringement. Paragraph 26 clearly states that the pharmacies were informed by the Defendant Duran that the data under Plaintiffs' software could be retrieved and

transferred "without the need to request and obtain plaintiffs' authorization". This allegation—which must be taken as true for purposes of this motion— clearly establishes that NFSF and the pharmacies had no knowledge that the act of the Duran's and the programmers in accessing Plaintiffs' software to extract NFSF's patient's data could constitute copyright infringement. Therefore, no contributory liability is possible in this case.

**5.     Copyright Registration**

Pursuant to the Copyright Act, "no civil action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made" with the Copyright Office. 17 U.S.C. § 411(a). In the present Complaint, plaintiff Gustavo Moreno, owner of the computer program "PharmaScan", alleges that said program is registered in the Copyright Office. However, Plaintiff has provided no evidence of said registration, either through submitting a copy of the registration or the certificate of registration number.

More so, providing evidence of the source code version covered by the copyright registration is imperative because it allows for a "direct comparison" between the allegedly infringing program and the precise version of the software program covered by the copyright—contrary to a newer version of the software program that has not been registered. *See Airframe Systems v. L-3 Communs Corp.,* 658 F. 3d 106-07. Here, the alleged copyright registration of the "PharmaScan" software is for a version of a software dated on 1989. Under applicable law, a prior registration for a computer software does not include or protect any further versions or amendments that the software may add or amend throughout the years. In *Airframe Systems*, the First Circuit affirmed summary judgment for the defendant where the plaintiff alleged copyright infringement of its software program but did not present any evidence of the source code. 658 F.3d at 106. The *Airframe Systems* court ruled that before the substantial similarity analysis can occur, "the plaintiff must necessarily establish *the content* of the copyrighted work that it contends was infringed." *Id.* (emphasis added). Accordingly, the plaintiff

was required "to present sufficient evidence of copying (including substantial similarity) with respect to at least one of the [software program's] source code versions covered by its copyright registrations." *Id.*; *see also Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576-77 (5th Cir. 2003). <u>Puerto Rico v. OPG Tech., Inc.</u>, No. 15-3125 (JAG/BJM), 2016 U.S. Dist. LEXIS 138863, at *42-43 (D.P.R. Sep. 6, 2016). Plaintiffs have not complied with these requirements in order to establish any relation between their 1989 protected software and the uncopyrightable patient's information that was allegedly copied. More so, it is highly unlikely that, considering how rapid the software industry changes, the version of the software being used by the Defendants when the alleged licenses were terminated in 2016 was anything close to the software version registered in the year 1989. Therefore, although this Court has plenty of reasons to dismiss the Complaint, failure by Plaintiffs to submit both, the Certificate of Registration information and the deposit copy of the 1989 version of the software subject to the Certificate of Registration are further grounds for dismissing the Amended Complaint.

### III. CONCLUSION

Whereas stated above, regarding defendant NFSF, under Rule 12(b)(6), we respectfully request that this Honorable Court dismiss Plaintiffs' Amended Complaint [Dkt_106] with prejudice for failure to state a claim upon which relief may be granted, and that it grant any other relief that this Honorable Court understands just and proper.

Respectfully submitted.

s/*Carla Ferrari Lugo*
Carla Ferrari Lugo
USDC No. 221804

P.O. Box 988
Aguadilla, PR 00605-0988
ferraric@ferrarilawpr.com
(787) 891-4255
(787) 986-7493

Dated:  December 2, 2020
Aguadilla, Puerto Rico

**CERTIFICATE OF SERVICE**

    I hereby certify that, on this same date, I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record.

s/ *Carla Ferrari Lugo*
Carla Ferrari Lugo
